

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
Larry Jacobson, as Chairman of the
Joint Industry Board of the Electrical
Industry,

                        Plaintiff,

    -against-

Televida, Inc., James Holden, Paul J. Mucci,
Robert M. Cipolla, Gary G. Cooper,

                        Defendants.
-----------------------------------------------------X

MEMORANDUM &
ORDER

04CV163(SLT)(MDG)

U.S.D.J., TOWNES

**Appearances**:
For Plaintiff:
James Robert Grisi
Cohen, Weiss and Simon, LLP
330 West 42nd Street
25th Floor
New York, NY

For Defendants Telvida, Inc. and James Holden:
Mark N Reinharz
Bond, Schoeneck & King, PLLC
1399 Franklin Avenue, Suite 200
Garden City, NY

For Defendants Paul J. Mucci, Robert M. Cipolla, and Gary Cooper:
Gary G. Cooper
Cooper & McCann, LLP
Tarrytown-Elmsford Corporate Center
Three West Main Street
Elmsford, NY

On January 15, 2004, plaintiff Larry Jacobson ("Plaintiff"), as Chairman of the Joint

Board of the Electrical Industry (the "Joint Board"), commenced this action against defendants

1

Telvida, Inc. ("Telvida"), James Holden ("Holden"), Paul J. Mucci ("Mucci"), Robert M. Cipolla ("Cipolla"), and Gary Cooper ("Cooper"). Eight months later, Holden, individually, and Mucci, Cipolla, and Cooper,[1] jointly, moved to dismiss the fourth and fifth causes of action of the complaint.[2] The fourth and fifth causes of action are asserted for breach of contract under Section 301 of the Labor Management Relations Act, 29 U.S.C. 185 (a) ("Section 301") and state law, respectively. For reasons discussed herein, Holden's motion to dismiss is denied in part with respect to Plaintiff's fourth cause of action and granted in part with respect to Plaintiff's fifth cause of action, and the Director Defendants' motion is granted in its entirety.

## BACKGROUND

The Joint Board is the administrator and fiduciary of various employee benefit plans within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1002 et. seq. ("ERISA"). (*See* Compl. ¶ 5.) It established and maintained these plans pursuant to a collective bargaining agreement between Local No. 3, International Brotherhood of Electrical Workers, AFL-CIO (the "Union") and employer associations and independent or unaffiliated employers in various industries (the "CBA"), and a Memorandum of Agreement between the same parties. (Compl. ¶ 4.) Rule 8(b) of the CBA states: "The Principals of any employer not affiliated with an association guarantee payment of contributions to the Joint Industry Board and to any fringe benefit funds included in this Agreement." (Reinharz Aff., Ex. B at 21.)

Telvida is a New York corporation engaged in the cable installation business within the

---

[1] Mucci, Cipolla, and Cooper are referred to collectively as the "Director Defendants" hereafter.

[2] This action is stayed against Telvida because the corporation is currently in bankruptcy proceedings. (3/14/05 Oral Argument Tr. at 7.)

2

New York metropolitan area. (Compl. ¶ 10.) Holden, Mucci, Cipolla, Cooper are its principal owners. (Comp. ¶ 11.) Holden executed an agreement dated April 11, 2003 (the "Letter of Agreement") which bound Telvida to the CBA's terms. (*See* Reinharz Aff., Ex. A; *see also* Compl. ¶ 14, 15.) It states: "The undersigned agrees to be bound by all of the provisions of the agreement and working rules between: New York Electrical Contractors Association, Inc. and Association of Electrical Contractors, Inc. and Local Union #3, I.B.E.W., AFL-CIO for the period of May 10, 2001 to May 13, 2004, a copy of which I have read and have in my possession." *Id.* The agreement is signed once by Holden; as directed by the form, Holden printed his name and title on the first line–"James K Holden, President"– and provided his signature on the line below. *Id.* Telvida failed to submit contributions for the period of weeks between June 4, 2003 and September 10, 2003 (*see* Compl. ¶ 19, 20). Plaintiff brings this action to recover these funds.[3]

## DISCUSSION

*Standard on a Motion to Dismiss Pursuant to Rule 12(b)(6)*

When evaluating a Rule 12(b)(6) motion, the court must, after accepting as true all factual allegations in the complaint and viewing the allegations in the light most favorable to the plaintiff, ascertain whether or not the plaintiff has stated any valid ground for relief. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The court may grant a Rule 12(b)(6) motion only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his

---

[3] In or about August 2003, Holden negotiated a settlement agreement with the Joint Board as an owner and shareholder of Telvida, on his own behalf, and on behalf of two of Telvida's wholly owned subsidiaries. (Compl. ¶ 22.) In this agreement, he acknowledged that Telvida owed the Joint Board delinquent contributions. *Id.* Yet, Holden refused to sign the agreement because it included a personal guaranty provision. (Compl. ¶ 23.) Nevertheless, payments were made pursuant to the settlement agreement by Telvida and/or Holden pursuant to the schedule included in the settlement agreement. *Id.*

3

claim which would entitle him to relief.'" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). The issue to be decided on this motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks omitted).

On this motion, counsel for the defendants have attached the CBA to their affidavits in support of the defendants' motions to dismiss. Pursuant to Rule 12(b)(6), when parties present matters outside the pleadings that are not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule." Fed. R. Civ. P. 12(b). The attachment of the CBA in this instance, however, does not require that the Court convert the motion into one for summary judgment under the precedent of this Circuit. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference [a document] upon which it solely relies and which is integral to the complaint, the defendant may produce [a document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure."). As a result, the Court will consider the CBA, and not convert this motion to dismiss into one for summary judgment.

I.  Personal Liability for Defendants Holden, Mucci, Cipolla, and Cooper Under Section 301 of LMRA

The individual defendants argue that they should not be held personally liable for Telvida's failure to contribute to the various ERISA plans because the personal guarantee clause

4

in the CBA is unenforceable. The parties agree that a signatory can be held personally liable under the terms of a collective bargaining agreement when there is "'clear and explicit evidence' of the defendant's intent to add personal liability to the liability of the entity." *Mason Tenders District Council Welfare Fund v. Thomsen*, 301 F.3d 50, 53 (2d Cir. 2002); *see also Cement and Concrete Workers District Council Welfare Fund v. Lollo*, 35 F. 3d 29, 35 (2d Cir. 1994); *Lerner v. Amalgamated Clothing & Textile Wrks. Union*, 938 F.2d 2, 5 (2d Cir. 1991).

Plaintiff brings his fourth cause of action under Section 301. This statute grants the district court jurisdiction to hear disputes "for the violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce." *Lollo*, 35 F.3d at 34; *see also* 29 U.S.C. § 185 (a). In addition, "[t]o maintain an action under this provision, [Plaintiff] must allege that [the defendants] breached a provision in the collective bargaining agreement." *Trustees of the Health and Welfare and the Pension Fund of the Four Joint Boards v. Schlesinger Brothers, Inc.*, 931 F. Supp. 204, 208 (S.D.N.Y. 1996). Here, it is undisputed that Telvida failed to remit contributions to the Joint Board as required under the CBA. Consequently, because Plaintiff is the administrator of the various employee benefit funds and therefore a third-party beneficiary of the collective bargaining agreement, he may sue on behalf of the funds. *Id.* (citing *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310 (2d Cir. 1990), *cert. denied*, 498 U.S. 982 (1990)). As a result, the issue on this motion is whether the defendants can be held individually liable for Telvida's breach of the CBA.

Section 301 does not enumerate which parties may be held liable for breaches of the collective bargaining agreements. Therefore, although federal law governs disputes under Section 301, "state law, 'if compatible with the purpose of § 301, may be resorted to in order to

find the rule that will best effectuate the federal policy.'" *Lerner*, 938 F.2d at 5 (quoting *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457 (1957)). Addressing the issue of the liability of corporate officers for contributions not remitted as required under a collective bargaining agreement, the Second Circuit Court of Appeals in *Lerner* looked to New York law to resolve an issue analogous to that presented here. There, it adopted the New York rule providing that "an agent who signs an agreement on behalf of a disclosed principal will not be individually bound by terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to that of his principal.'" *Id.* (quoting *Mencher v. Weiss*, 114 N.E.2d 177, 179, 306 N.Y. 1, 4 (1953)). Citing *Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 76, 10 N.Y.2d 63, 67 (N.Y. 1961), the Second Circuit stated that the rationale for this rule is that modern commercial business is done between corporations as opposed to the individual stockholders or officers of the corporation. *Id.* Accordingly, the *Lerner* court required "clear evidence of an intent to create individual liability" to hold a signatory officer personally liable under a collective bargaining agreement. *Lerner*, 938 F.2d at 5.

Three years after *Lerner*, the Second Circuit listed five factors courts should analyze to determine whether a signatory has evidenced an intent to be personally bound by an agreement. *Lollo*, 35 F. 3d at 35. These factors include: "the length of the contract, the location of the liability provision in relation to the signature line, the presence of the signatory's name in the agreement itself, and the signatory's role in the corporation." *Id.* Recently, the Second Circuit stated that since it is "nearly universal practice" in New York that an officer assuming individual responsibility under an agreement signs twice, the presence of only one signature weighs against finding personal liability. *Thomsen*, 301 F.3d at 54 (citing *Salzman Sign*, 176 N.E.2d at 76).

It is important to note that on this motion, Plaintiff seeks to hold the defendants liable based on a personal guarantee provision, as opposed to a personal liability provision as in *Lerner*. And although all parties cite *Lollo* and the factors listed therein as the governing law on the instant motion, "it is unclear whether the court in *Lollo* considered the [personal liability] provision to be one evidencing a promise to answer for the debt of another or, rather, a primary obligation." *Turtle & Hughes v. Browne*, 1996 U.S. Dist LEXIS 9555, at *11-12 (S.D.N.Y. Jul. 8, 1996). This distinction is particularly salient here because it is beyond doubt that Rule 8(b) of the CBA creates a secondary obligation upon the defendants.

Nevertheless, the New York cases that serve as the foundation for the *Lerner* rule, and in turn *Lollo*, interpret personal guarantee provisions. In *Salzman*, the court dismissed a complaint against a corporate officer where the agreement he signed included a personal guarantee provision, finding that the clause "purporting to bind the signing officer individually is not sufficient for Statute of Frauds purposes without some direct and explicit evidence of actual intent."[4] *Salzman Sign Co.*, 176 N.E.2d at 76. In a case based on materially similar facts, the New York Court of Appeals held that "[t]he obligation of a guarantor is, admittedly, a heavy one, and the courts should refrain from foisting such an obligation upon a party...who simply signs as [an] agent, absent the requisite clear and unequivocal evidence, to be gathered by the writing itself, that he intended to assume such a liability." *Savoy Record Co. v. Cardinal Export Corp.*, 203 N.E.2d 206, 209, 15 N.Y.2d 1, 7 (1964). Moreover, in *Lehman Brothers, Inc. v. Tutelar CIA Financieara, S.A.*, 1997 U.S. Dist. LEXIS 10353 (S.D.N.Y. Jul. 17, 1997), the district court

---

[4] The Statute of Frauds, codified as N.Y. Gen. Obligations Law § 5-107(a), requires a promise to pay the debts of another be in writing and signed by the party against whom the guarantee is to be enforced.

applied the *Lollo* factors to determine whether a corporate official can be held individually liable pursuant to a personal guarantee provision. Thus, the fact that the clause at issue here creates a personal guarantee as opposed to personal liability does not preclude the application of *Lerner* and its progeny.

A. Director Defendants

The Director Defendants make two arguments in support of their motion: first, Plaintiff's fourth cause of action is pre-empted by ERISA; and second, that Plaintiff's claims fail under *Lollo*. Since Plaintiff brings his claim under Section 301, and it is without doubt that one federal statute cannot pre-empt another, the Director Defendants' first argument fails.

Because the *Lollo* court directly addressed the liability of nonsignatory officers pursuant to a personal liability provision in a collective bargaining agreement, the facts in that case support the Director Defendants' second argument. Applying the factors listed above, the Court held that the length of the contract, the location of the provision at issue, and the absence of the defendants names in the contracts failed to support the plaintiff's attempt to recover contributions to its employee benefit funds. *Lollo*, 35 F.3d at 35. It also stated that the absence of signatures "futher erode[d]" any claim that nonsignatory directors intended to be held liable pursuant to a liability provision. *Id.*

Here, the personal guarantee provision is on page twenty-one of a seventy-nine page agreement, the names of the Director Defendants do not appear in the contract, and they did not sign the CBA or the Letter of Agreement. Moreover, there is no allegation in the complaint that the Director Defendants read the CBA, or even knew its terms. As a result, Plaintiff's fourth cause of action should be dismissed against the Director Defendants because under no set of facts

8

will he be able to prove his claim. *See Sadowski v. Technical Career Institutes, Inc.*, 1995 U.S. Dist LEXIS 13262, at *6 (S.D.N.Y. Jul. 25, 1995) ("[c]orporate officers cannot be held liable under [Section 301] for actions taken in their corporate capacities unless they subscribed in their personal capacities to the collective bargaining agreement.")

Plaintiff claims that he is seeking only to enforce a provision of the agreement against the Director Defendants. But he does not articulate how nonsignatories to a contract can be held liable under a personal guarantee provision in an agreement they did not sign, or support this claim with any case law. His argument is therefore not persuasive, and does not prevent dismissal of his fourth cause of action against the Director Defendants.

B. Holden

The dismissal of Plaintiff's cause of action against Holden is a closer question. Since Holden signed the Letter of Agreement which states that as the signatory he read, possessed, and "agree[d] to be bound by all of the provisions of the [CBA]," (*see* Reinharz, Ex. B), Plaintiff's fourth cause of action appears tenable. In his moving brief, Holden argues that the facts presented and alleged do not support Plaintiff's claim under *Lerner, Lollo, Thomsen,* or *Mason Tenders District Council Welfare Fund v.Masucci*, 1997 U.S. Dist. LEXIS 8527, at * (S.D.N.Y. June 16, 1997) (granting the defendant's motion for summary judgment where four of the five *Lollo* factors weighed in favor of the defendant: the location of the personal liability provision, the length of the contract, the fact that the officer's name was handwritten under the his signature and is not mentioned in the text of the contract, and the parties did not negotiate this clause). None of these cases, however, were decided as a result of a motion to dismiss pursuant to Rule 12(b)(6).

9

Application of the *Lollo* factors demonstrates that Plaintiff has sufficiently pleaded Holden's personal liability under Rule 8(b). With the facts before the Court, it appears that three of these factors weigh against finding Holden personally liable for Telvida's failure to remit contributions to the Joint Board: the length of the contract; the location of the liability provision; and the absence of Holden's name in the signature line. In addition, that Holden only signed the Letter of Agreement once, and his signature is under the heading: "For the Employer" demonstrates that he may have intended to sign in his official as opposed to personal capacity. However, he did acknowledge that he read the CBA and had it in his possession before his signature on the Letter of Agreement. And with respect to the other two *Lollo* factors–the negotiations of the parties and Holden's role in the corporation– he has not proven that there is no set of facts which will prove that these factors do not weigh heavily in Plaintiff's favor. As a result, defendant Holden's motion to dismiss Plaintiff's fourth cause of action against him is denied.

II. Personal Liability for Defendants Holden, Mucci, Cipolla, and Cooper Under State Law

*Section 301 Pre-emption*

The Supreme Court has consistently held that "where the state law claim requires interprets the terms of a labor contract, pre-emption follows." *Gray v. Grove Manufacturing Co.*, 971 F. Supp. 78, 84 (E.D.N.Y. 1997) (Dearie, J.); *see also, Livadas v. Bradshaw*, 512 U.S. 107, 12-234 (1994) ; *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988), *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). As a result, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be either treated as a § 301 claim or dismissed as pre-

empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220.

*ERISA Pre-emption of State Law*

Congress sought to protect the right of participants in employee benefit plans through the passage of ERISA. It chose to do so "by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *See* 29 U.S.C § 1001. That ERISA was "designed to establish pension plan regulation as exclusively a federal concern," *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (internal quotation marks omitted), is expressed in Section 514(a), codified as 29 U.S.C. § 1144(a). It states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U. S. C. § 1144(a). The "State laws" pre-empted by this section includes "all laws, decisions, rules, regulations, or other State action having the effect of law." *Ingersoll-Rand Co.*, 498 U.S. at 139 (citing 29 U. S. C. § 1144(c)(1)). But the laws pre-empted are limited to those that "relate to employee benefit plans," i.e. "'refer[] to or [have] a connection with covered benefit plans (and [do] not fall within a § 514(b) exception) even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements.'" *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 573 (2d Cir. 1995) (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 (1992)).

A claim "relates to" an employee benefit plan in two ways. First, a state law or claim that expressly refers to the employee benefit plans regulated by ERISA is pre-empted under Section

11

514 (a). *See Ingersoll-Rand Co.*, 498 U.S. at 139; *Romney v. Lin*, 94 F. 3d 74, 79 (2d Cir. 1996). Second, when the claim does not make explicit reference to ERISA, it may still "relate to" employee benefit plans under the statute because it would "serve the basic purpose of [Section 514(a)]." *Greenblatt,* 68 F.3d at 574. In other words, if "the claim is within the civil enforcement provisions of ERISA," it is pre-empted. *Id.* at 573 (citations omitted). Even if the law relates to employee benefit plans, state laws regulating "insurance, banking, securities, and generally applicable criminal laws are exempt from pre-emption." *Id.* at 573.

In *Pilot Life Ins. Co. v. Dedeuax*, 481 U.S. 41, 53 (1987), the Supreme Court addressed the pre-emptive effect of the civil enforcement mechanism in ERISA. After analyzing the statute's language, structure, and legislative history, the Court held that ERISA's civil enforcement provision, Section 502(a), codified at 29 U.S.C. § 1132,[5] was intended to be the exclusive means by which a participants or beneficiary "may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *See id.* The statute's legislative history was particularly persuasive because the Court found that Congress modeled the comprehensive remedial approach in Section 502(a) after that in Section

---

[5] The section states:
" A civil action may be brought--

\*\*\*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) *to enforce any provisions of this title* or the terms of the plan;

\*\*\*

(e) Jurisdiction.
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 101(f)(1) [29 USCS § 1021(f)(1)]...

29 U.S.C. § 1132 (emphasis added).

301. *Id.* at 52. The Court held further that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54. As a result, if the prosecution of a state claim would produce, or lead to, "a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans," the claim is pre-empted. *Greenblatt*, 68 F.3d at 574 (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 654, 657 (1995) ("Blue Cross")). To determine whether a cause of action would lead to this unwanted result, the Court held that state laws that "provide alternate enforcement mechanisms' to § 502(a)" are pre-empted. *Blue Cross*, 514 U.S. at 657. Additionally, as the Supreme Court recently held in *Aetna Health, Inc. v. Davila*, 542 U.S. 200, ___, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312, 327 (2004), "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." (citing *Pilot Life Ins.*, 481 U.S. at 54-56.)

Although the pre-emption clause is very broad, the "relate to" analysis has limits. In *Plumbing Industry Board, Plumbing Local Union No. 1 v. E.W. Howell, Inc.*, 126 F.3d 61, 66 (2d Cir. 1997), the Second Circuit stated that in *California Div. Of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 463 U.S. 85, 96-96 (1997), the Supreme Court narrowed the "relate to" requirement for pre-emption because it proved to be a "verbal coat of too many colors." Thus, "a state statute is not preempted by ERISA if it 'affects employee benefits plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' a plan.'"

*Romney*, 94 F. 3d at 79 (quoting *Shaw v. New York State Division of Human Rights*, 463 U.S. 85, 100 n.21(1983)). Rather, district courts must begin their analysis with a presumption that Congress did not intend to "'supplant state law' and [apply] the preemption clause 'to look to the objective of the ERISA statute as a guide to the scope of state law that Congress understood would survive.'" *Plumbing Industry Board*, 126 F.3d at 66-67 (quoting *Blue Cross*, 514 U.S. at 657).

A.   Holden

Holden argues that Plaintiff's fifth cause of action is pre-empted by both Section 301 and ERISA. This cause of action alleges that Defendants are liable under state law for breach of contract. Plaintiff fails to respond to this argument. In any event, Holden's arguments are persuasive. Since Plaintiff's fifth cause of action of action requires an interpretation of the CBA, it is pre-empted. *See Greenblatt*, 68 F.3d at 572 ("since the resolution of the surety claim requires inquiry into Delta's obligation under the collective bargaining agreement, New York surety law is pre-empted and its claim is therefore necessarily a federal one under § 301").

Plaintiff's fifth cause of action is also pre-empted by ERISA because it falls within the civil enforcement remedies of the statute. Although Plaintiff's stated cause of action is for breach of contract, the gravamen of his claim seeks recovery of delinquent contributions to the Joint Board. Yet, "ERISA §502(a) already provides a means for collecting delinquent contributions from employers." *Romney*, 94 F.3d at 81. Under Title 29, Section 1145:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

14

29 U.S.C. § 1145. A participant may enforce this obligation under ERISA Section 502(a), which provides a cause of action to enforce ERISA section, and 29 U.S.C. § 1132 (g)(2), which states: "In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 USCS § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan--(A) the unpaid contributions." 29 U.S.C. § 1132(g)(2). Assuming *arguendo* that Holden, and the Director Defendants are "employers" as defined by ERISA,[6] since Plaintiff's breach of contract claim duplicates the civil enforcement remedy for the recovery of delinquent contributions under ERISA, his state law cause of action is pre-empted. *See Mason Tenders District Council Welfare Fund v. Logic Construction Corp.*, 7 F. Supp. 2d 351, 358-59 (S.D.N.Y. 1998). He has therefore failed to state a claim for relief under state law. *Id.*

B.  Director Defendants

Although advanced in support of their motion to dismiss Plaintiff's fourth cause of action, the Director Defendants also contend that ERISA pre-empts a cause of action against them if that cause of action is based on their status as shareholders. To this argument, Plaintiff responds that he is not attempting to recover against the Director Defendants in their individual capacities on the basis of their status as shareholders but under the terms of the CBA.[7] There is no dispute that "an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993), *cert.*

---

[6] Section 1002(5) of Title 29 states: "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 USCS §1002(5).

[7] Plaintiff does not allege in the complaint or argue elsewhere that he is suing the Defendants in their individual capacities in an effort to pierce the corporate veil. Thus, that issue is not discussed here.

*denied*, 508 U.S. 973 (1993) (citing *International Brotherhood of Painters v. George A. Krachner, Inc.*, 856 F.2d 1546, 1547-48, 1550 (D.C. Cir. 1998)). Rather, under Section 1145 of ERSIA, employers who are already obligated in the absence of ERISA are the only parties against whom a plaintiff may recover. *Lollo*, 25 F.3d at 36. As a result, if Plaintiff's claim is construed as one seeking to recover delinquent contributions against the Director Defendants by virtue of their roles as shareholders of Telvida, it cannot stand. In addition, for the same reasons as discussed regarding Holden's motion, *see* Section II(A) *supra*, ERISA pre-empts Plaintiff's state law cause of action against the Director Defendants. *See Lollo*, 35 F.3d at 37 (holding that nonsignatory defendants were not liable under ERISA Section 515). Accordingly, Plaintiff's fifth cause of action against the Director Defendants should be dismissed.

## CONCLUSION

With respect to Plaintiff's fourth cause of action, it is dismissed against the Director Defendants. But since Holden has failed to prove that no set of facts exists which would entitle Plaintiff to relief, this cause of action survives his motion to dismiss. As to Plaintiff's fifth cause of action, it is dismissed against both Holden and the Director Defendants because both Section 301 and ERISA pre-empt Plaintiff's state law breach of contract claim.

Dated: Brooklyn, New York
       July 28, 2005

/SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE